OPINION
Robert and Amy Go appeal from a judgment of the Greene County Court of Common Pleas, which affirmed a decision of the Sugarcreek Township Board of Zoning Appeals ("the BZA") to deny them a variance.
The history of the case is as follows.
The Gos bought a lot in the Deerfield Estates subdivision and hired a builder, Newt Bartel, to construct a custom-designed home for them on the lot. The Gos' lot backed up to Feedwire Road, and the width of the rear portion of the lot was defined by a large mound of dirt, measuring approximately nine feet high and twenty feet deep, which apparently served as a sound barrier between the road and the subdivision. After the Gos had designed their home to fit the dimensions of their lot, the builder staked out where the house would sit on the lot in keeping with all of the applicable zoning requirements. In particular, the front stakes were set back forty feet from the street, which was the minimum set back required by the zoning ordinances. Once the stakes were set, however, the Gos and Bartel realized that the porch on the back of the house would be very close to the mound, and the Gos asked Bartel whether it would be possible to move the house closer to the street. Bartel told the Gos that he would look into whether that would be possible.
Bartel approached the Sugarcreek Township Zoning Inspector, Allen Stoner, about moving the house forward ten feet. According to Bartel, Stoner stated that "there shouldn't be a problem with it," verbally approved the change, and told Bartel that no variance was needed because the Gos were "not moving [the house] that much." Bartel then adjusted the position of the house and poured the footers. Bartel claimed that he had called Stoner to inspect the footers, as he believed to be required, but that Stoner had said that an inspection was unnecessary. Bartel finished construction of the house at the location thirty feet from the road.
When the Gos' bank conducted a survey of the property prior to the closing of their loan, it discovered that the house did not comply with the set back requirements. The Gos sought a variance so that the house would not be in violation of the zoning ordinance regarding set backs. The BZA conducted a hearing on the request and denied the variance on January 27, 2000. The record of the hearing made clear that the BZA did not intend to require the removal of the house or to deprive the Gos of occupancy of the house. It simply refused to alleviate whatever financing and title problems had been created by the house's noncompliance with the zoning ordinances for fear that other homeowners in the subdivision, especially those with smaller lots than the Gos, would request similar variances.
The Gos appealed the BZA's decision to the court of common pleas pursuant to R.C. 2506.04. The trial court affirmed the judgment of the BZA.
The Gos raise two assignments of error on appeal. Because both of these assignments contend that the BZA did not have sufficient evidence upon which to deny the variance, we will consider the assignments together.
 I. THE TRIAL COURT ERRED IN AFFIRMING THE DECISION OF THE SUGARCREEK TOWNSHIP BOARD OF ZONING APPEALS AS SAID DECISION WAS NOT SUPPORTED BY THE PREPONDERANCE OF SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE ON THE WHOLE RECORD AS REQUIRED BY R.C. 2506.04. * * *
 II. THE TRIAL COURT ERRED WHEN IT AFFIRMED THE DECISION OF THE SUGARCREEK TOWNSHIP BOARD OF ZONING APPEALS BECAUSE SAID BOARD OF ZONING APPEALS COMMITTED LEGAL ERROR IN DENYING THE APPLICATION FOR A VARIANCE BECAUSE THE EVIDENCE SUPPORTED ALL OF THE REQUIREMENTS FOR A VARIANCE AS SET FORTH IN THE SUGARCREEK TOWNSHIP ZONING RESOLUTION.
The Gos claim that "basic justice" required that they be granted a variance because their house had been built in violation of the zoning ordinances through "no fault of their own." They also contend that "special circumstances" existed justifying the variance, namely Stoner's advice that a variance was not needed and his representation that the footers did not need to be inspected.
When considering an administrative appeal, a court of common pleas must weigh the evidence in the record to ascertain whether there exists a preponderance of reliable, probative, and substantial evidence to support the administrative agency's decision. Dudukovich v. Lorain Metro. Housing Auth. (1979), 58 Ohio St.2d 202, 207; John P. Raisch, Inc. v. Board of Zoning Appeals (June 18, 1999), Montgomery App. No. 17561, unreported. Consistent with its findings, the court may affirm, reverse, vacate, or modify the decision, or remand the matter to the body appealed from with instructions to enter a decision consistent with the findings or opinion of the court. R.C. 2506.04.
The BZA and the trial court relied upon the following criteria in reaching their decisions, which are set forth in Sugarcreek Township's Application for Variance:
 * * * In order for a variance to be granted the applicant must provide a justification statement that establishes, by way of factual evidence, to the Board of Zoning Appeals that the variance complies with the following criteria:
 a.) Conditions and Circumstances: That special conditions and circumstances exist which are an impediment to the land, building or structure involved and which are not applicable to other lands, buildings, and structures.
 b.) Property Rights: The literal interpretation of the provisions of the Zoning Resolution would deprive the applicant of property rights commonly enjoyed by other properties in the same district under the terms of the Zoning Resolution.
 c.) Applicant Fault: That the special conditions and circumstances do not result from the actions of the applicant or their [sic] authorized agents.
 d.) No Special Privilege: That granting the variance requested will not confer on the applicant any special use privilege that is denied by the Zoning Resolution to other lands, buildings, and structures in the same district.
 e.) Harmony with Locality: The granting of the variance requested will not alter the essential character of the locality * * *.
See, also, Sugarcreek Township Ordinance 20.08(5).
These criteria provide some support for the BZA's denial of a variance which would have allowed the house to be built within the established set back distance from the street. There was no question that the mound had been in place when the Gos purchased the lot. The evidence presented at the hearing established that the owners of several lots along the Gos' side of the street were presented with the same topographical challenge, namely, the large mound in the backyard. Because the enforcement of the set back requirement created the same shortage of a flat backyard space for other lots as it did for the Gos, the enforcement of the provision did not "deprive the applicant of property rights commonly enjoyed by other properties" in the same area. The BZA could also have reasonably concluded that the Gos' need for a variance arose from their own actions or the actions of their agents. The house appears to have been designed without regard to the mound in the backyard, and upon discovering that the back of their porch would nearly abut the slope of the mound, the Gos apparently did not consider redesigning the house or the porch. The Gos' argument that they bore no fault ignores the fact that their builder acted as their agent in determining what action was necessary to build within the set back limits. It was apparent from the transcript of the hearing before the BZA that it did not believe that a reasonable builder would have proceeded without some documentation that he was permitted to build within the set back, notwithstanding Bartel's alleged conversations with Stoner. The BZA also rejected the idea that a reasonable builder could have believed that a zoning inspector could grant a variance. The fact that the Gos' home had already been built was not a circumstance inherent in the lot itself and, while this fact may result in a harsher result for the Gos than for others denied a variance, the BZA was not required to conclude that this circumstance warranted a variance. After all, this circumstance was of the Gos' own creation, albeit inadvertently, and the Gos' complaint that the lack of a variance created financing and title problems was not established with any particularity at the hearing. For these reasons, the trial court could have reasonably concluded that the BZA properly rejected the Gos' request for a variance based on the factors set forth in Sugarcreek Township's Application for Variance.
The supreme court, however, has held that the standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 35. See, also, Duncan v. Village of Middlefield (1986), 23 Ohio St.3d 83, 85-86. Further, it has held that an application for an area variance must establish only practical difficulties, not unnecessary hardship. Kisil, 12 Ohio St.3d at 35; Duncan, 23 Ohio St.3d at 85-86. In Duncan, the supreme court noted that the key the to "practical difficulties" test "is whether the area zoning requirement, as applied to the property owner in question, is reasonable." Duncan, 23 Ohio St.3d at 86. It set forth a noninclusive list of factors to be considered in determining whether practical difficulties exist which would justify granting an area variance:
 The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance.
Id. These factors differ from the factors set forth in Sugarcreek Township's Application for Variance, which does not seem to make a distinction between use and area variances.
In our view, the trial court should reconsider the propriety of the BZA's decision in light of the practical difficulties standard established by the supreme court in cases involving area variances. After conducting such a review, the trial court may affirm, reverse, or modify the BZA's decision in keeping with R.C. 2506.04.
The Gos' first assignment of error is sustained for the reasons set forth in this opinion. The second assignment is overruled.
The judgment of the trial court will be reversed, and this matter will be remanded to the trial court for further proceedings consistent with this opinion.
 ___________ PER CURIAM:
WOLFF, P.J., GRADY, J., and YOUNG, J., concur.